**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

|  |  |
|---|---|
| IN RE GENERAL MOTORS COMPANY SECURITIES LITIGATION | Case No. 4:23-cv-13132-SDK-EAS<br><br>District Judge Shalina D. Kumar<br><br>Magistrate Judge Elizabeth A. Stafford<br><br>**(Oral Argument Requested)** |

**GM DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

# <u>TABLE OF CONTENTS</u>

Table of Authorities ............................................................................................... ii

ARGUMENT ............................................................................................................2

I.    The Complaint Fails to Plead Falsity ............................................................2

    A.    Plaintiffs Have Not Alleged a False Statement About AV Function ...............................................................................................2

    B.    Plaintiffs' New "Commercialization" Theory Fails.............................7

    C.    Plaintiffs' Safety-Related Allegations Fail .........................................8

II.   The Complaint Fails to Raise a Strong Inference of Scienter ........................9

    A.    Cruise's Knowledge Cannot Be Imputed to GM ................................9

    B.    The Complaint Does Not Allege That Any GM Defendant Knew Information Contradicting Their Statements ......................................9

    C.    The Core Operations Inference Is Inapplicable .................................12

    D.    Plaintiffs' "Additional Allegations" Do Not Support Scienter..........13

    E.    GM's Inference Is "More Compelling" ..............................................14

III.  The Complaint Fails to Plead Loss Causation...............................................15

CONCLUSION.......................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bond* v. *Clover Health Invs., Corp.*,
    587 F. Supp. 3d 641 (M.D. Tenn. 2022) ............................................................14

*Bondali* v. *Yum! Brands, Inc.*,
    620 F. App'x 483 (6th Cir. 2015) ...........................................................4, 6, 8, 13

*In re Cardinal Health Inc. Sec. Litig.*,
    426 F. Supp. 2d 688 (S.D. Ohio 2006) .........................................................13, 14

*City of Pontiac Gen. Employees' Ret. Sys.* v. *Stryker Corp.*,
    865 F. Supp. 2d 811 (W.D. Mich. 2012) ...........................................................12

*City of Warren Police & Fire Ret. Sys.* v. *World Wrestling Ent. Inc.*,
    477 F. Supp. 3d 123 (S.D.N.Y. 2020) ..................................................................6

*Cockrun* v. *Berrien Cty.*,
    101 F.4th 416 (6th Cir. 2024) ...............................................................................9

*Constr. Indus. & Laborers Joint Pension Tr.* v. *Carbonite, Inc.*,
    22 F.4th 1 (1st Cir. 2021) ......................................................................................7

*Dailey* v. *Medlock*,
    551 F. App'x 841 (6th Cir. 2014) ..........................................................................3

*Doshi* v. *Gen. Cable Corp.*,
    823 F.3d 1032 (6th Cir. 2016) ......................................................................12, 15

*Downing* v. *Foley & Lardner LLP*,
    2010 WL 1494767 (E.D. Mich. 2010) ...................................................................5

*In re Energy Recovery Inc. Securities Litigation*,
    2016 WL 324150 (N.D. Cal. 2016) .......................................................................7

*Frank* v. *Dana Corp.*,
    646 F.3d 954 (6th Cir. 2011) ...............................................................................13

*Gagnon* v. *Alkermes PLC*,
    2019 WL 2866113 (S.D.N.Y. 2019) ......................................................................6

*I.B.E.W.* v. *Ltd. Brands, Inc.*,
   788 F. Supp. 2d 609 (S.D. Ohio 2011) ...............................................................14

*Indiana Electric Workers' Pension Trust Fund IBEW* v. *Shaw Group, Inc.*,
   537 F.3d 527 (5th Cir. 2008) .........................................................................10, 11

*IWA Forest Industry Pension Plan* v. *Textron Inc.*,
   14 F.4th 141 (2d Cir. 2021) ..................................................................................6

*Janus Cap. Grp., Inc.* v. *First Deriv. Traders*,
   564 U.S. 135 (2011)...............................................................................................2

*JRS Partners, GP* v. *Leech Tishman Fuscaldo & Lampl, LLC*,
   2024 WL 2874575 (6th Cir. 2024) ........................................................................9

*In re KBC Asset Mgmt. N.V.*,
   572 F. App'x 356 (6th Cir. 2014) ........................................................................15

*Konkol* v. *Diebold, Inc.*,
   590 F.3d 390 (6th Cir. 2009) ...............................................................................10

*Lamontagne* v. *Tesla, Inc.*,
   2024 WL 4353010 (N.D. Cal. 2024) ......................................................................8

*Lim* v. *Hightower*,
   2024 WL 4349409 (N.D. Ohio 2024).........................................................5, 6, 14

*In re Omnicare Sec. Litig.*,
   769 F.3d 455 (6th Cir. 2014) ...............................................................................10

*Palazzolo* v. *Fiat Chrysler Automobiles N.V.*,
   2017 WL 6389573 (E.D. Mich. 2017)..................................................................11

*Pittman* v. *Unum Grp.*,
   861 F. App'x 51 (6th Cir. 2021) ..........................................................................12

*Plymouth Cty. Ret. Ass'n* v. *ViewRay, Inc.*,
   2022 WL 3972478 (6th Cir. 2022) .........................................................................6

*PR Diamonds, Inc.* v. *Chandler*,
   364 F.3d 671 (6th Cir. 2004) ...............................................................................11

*In re QuantumScape Sec. Class Action Litig.*,
   580 F. Supp. 3d 714 (N.D. Cal. 2022).................................................................7

*Ret. Sys.* v. *Ernst & Young, LLP*,
   622 F.3d 471 (6th Cir. 2010) ...............................................................................9

*Shupe* v. *Rocket Companies, Inc.*,
   660 F. Supp. 3d 647 (E.D. Mich. 2023) .............................................................11

*Sinay* v. *Lamson & Sessions Co.*,
   948 F.2d 1037 (6th Cir. 1991) .............................................................................8

*Teamsters Loc. 237 Welfare Fund* v. *ServiceMaster Glob. Holdings, Inc.*,
   83 F.4th 514 (6th Cir. 2023) ........................................................................*passim*

*Tellabs, Inc.* v. *Makor Issues & Rts.*,
   551 U.S. 308 (2007)............................................................................................14

*Winslow* v. *BancorpSouth, Inc.*,
   2011 WL 7090820 (M.D. Tenn. 2011)................................................................11

**Statutes**

15 U.S. Code § 78t......................................................................................................15

Cal. Code. Regs. tit. 13, § 227.48 ...............................................................................4

**Other Authorities**

Rules 10b-5(a) and (c).................................................................................................15

The opposition makes clear that Plaintiffs have failed to plead three necessary elements of their claims, each of which requires dismissal of the Complaint.

*First*, Plaintiffs fail to allege that any of the GM Defendants' statements were false.  Plaintiffs seek to maintain their claims by misconstruing the industry term "Level 4" and contorting the terms "autonomous" and "driverless" to mean that Cruise vehicles never required *any* remote human intervention.  That is simply an incorrect and implausible interpretation of those terms.  Plaintiffs effectively demand perfect AV technology beyond the definition of even Level 5.  Significantly, Plaintiffs ignore Defendants' numerous public statements that "autonomous" and "driverless" status includes backup remote human intervention.  Plaintiffs' principal rejoinder is that "fact questions" exist, but Plaintiffs cannot create a fact issue by asking the Court to misconstrue a key term by ignoring its usage and context.

*Second*, as to scienter, Plaintiffs blur lines among the Individual Defendants, GM, and Cruise to distract from their failure to plead that any GM Individual Defendant had information contradicting the alleged misstatements.  Plaintiffs do not allege facts showing that the GM Defendants intended to commit fraud, and they do not allege any facts, or cite any cases, showing that their scienter allegations against Cruise (which are themselves insufficient) should be imputed to GM.

*Third*, Plaintiffs fail to plead loss causation.  Their three alleged corrective disclosures are either disclosures of already-known information or relate to the

1

collision, which is disconnected from the statements regarding Cruise's technology.

**ARGUMENT**

**I.     The Complaint Fails to Plead Falsity[1]**

**A.     Plaintiffs Have Not Alleged a False Statement About AV Function**

GM demonstrated that Plaintiffs' allegations of falsity, which relate to the "Level 4," "driverless," and "autonomous" statements, should be dismissed.  Br. 13–22.[2]  Nothing in Plaintiffs' Opposition warrants a different conclusion.

**"Level 4" Statements**.  GM showed that its statements describing Cruise AVs as "Level 4" were truthful, as that term had a specific meaning under the Taxonomy, and the Complaint pleads no facts suggesting Cruise AVs were not "Level 4."  Br. 13–18.  The Opposition makes two key concessions that buttress this result.

*First*, Plaintiffs concede that because GM used "Level 4" as a "term of art," then the Taxonomy's definition controls.  Opp'n 28.  They try to avoid their concession by citing a single *Cruise* blog post purportedly "defin[ing] 'Level 4' as synonymous with 'fully driverless.'"  *Id.*  Beyond the illogic of this argument

---

[1] Plaintiffs' assertion that Cruise's collision-related statements can be imputed to GM, Opp'n 57 n.19, is wrong, *Janus Cap. Grp., Inc.* v. *First Deriv. Traders*, 564 U.S. 135, 141 (2011), and, in any event, is forfeited, *see infra* p. 9.

[2] "Br." and "Ex." refer to the GM Defendants' Brief in Support of their Motion to Dismiss, ECF No. 31 (PageID.482–526), and accompanying exhibits, ECF Nos. 31-2 through 31-35 (PageID.530–1234), respectively.  "Opp'n" refers to Plaintiffs' Response to Defendants' Motions to Dismiss, ECF No. 39 (Page.ID2278–2368). For quoted material, unless otherwise indicated, all emphasis is added and all internal alterations, footnotes, quotations, and citations have been omitted.

("Level 4" has no meaning other than the Taxonomy's), the *same* Cruise post states that Cruise AVs were capable of "executing the L4 fully driverless" AV function because they operated "without a safety driver," *not* because they operated without any human input at all.[3]  Br. 15; Ex. 18.  This echoed the Taxonomy, which defines "driverless" as an AV that is "unoccupied" or whose "on-board users are not drivers" and gives examples of Level 4 AVs receiving assistance from "a remotely located human."  Ex. 5 at 9, 18–19.  Plaintiffs identify *no other support* for the position that Level 4 meant anything other than the industry-standard Taxonomy "term of art."

*Second*, Plaintiffs concede that they cannot plead falsity if Cruise AVs satisfied the Level 4 criteria.  Opp'n 28–29, 31–32.  Because Cruise AVs "me[t] the regulatory criteria" for Level 4 then, as a matter of law, "it cannot be false or misleading" to describe them that way.  *Dailey* v. *Medlock*, 551 F. App'x 841, 847–48 (6th Cir. 2014).  Plaintiffs argue, however, that Cruise AVs did not satisfy Level 4 because they "consistently failed to initiate a DDT fallback."  Opp'n 29.  This argument is completely unsupported.

Under the Taxonomy, the "dynamic driving task" ("DDT") fallback is "the response by an [AV] to achieve [a] minimal risk condition," i.e., bringing the car to

---

[3] GM repeatedly stated that Cruise's Level 4 technology *did not preclude all human involvement*. *E.g.*, ¶ 348 (Jacobson describing Cruise AVs as "full Level 4" because there was "no driver *in the vehicle* at all"); Ex. 22 at 106–32 (Cruise as "L4 high automation system" and discussing remote human involvement).

3

a "stable, stopped condition," when it experiences a failure.  Ex. 5 at 9–10, 15; Br. 5–6.  Far from demonstrating that Cruise AVs could *not* perform the DDT fallback as Level 4 requires, Ex. 5 at 31, allegations recounting Cruise AVs stopping "in the middle of the road," Opp'n 31, reflect the DDT fallback *precisely* as Level 4 contemplates:  "automatically bringing the vehicle to a stop *within its current travel path*," Ex. 5 at 15; Br. 5–6, 17–18.[4]  Allegations that GM falsely characterized Cruise AVs as "Level 4" thus should be dismissed.[5]

**Driverless and Autonomous Statements**.  Plaintiffs' theory based on statements that the AVs were "driverless," "fully driverless," and "fully autonomous" succeeds only if those statements are divorced from their context and interpreted as meaning no human intervention *anywhere*.  But GM never said that; rather, it repeatedly noted the role of remote human assistance.  Br. 16–22.  Cruise's CEO in fact said that he would not "ever want to get rid of that."  Ex. 17 at 2.[6]

Plaintiffs respond by distorting two statements.  *First*, they seize on Barra's

---

[4] Plaintiffs' claim that "[e]ven if [the October 2 collision] were the only failure, it would mean Cruise AVs were not Level 4," Opp'n 30, proves too much and cannot be squared with Sixth Circuit authority.  *See Bondali* v. *Yum! Brands, Inc.*, 620 F. App'x 483, 491 (6th Cir. 2015) ("Taken alone, eight [safety concerns] is hardly a companywide food safety epidemic[.]").  Nor can it be squared with the Taxonomy, Ex. 5 at 36, or California regulations that contemplate ongoing AV collision reporting, Cal. Code. Regs. tit. 13, § 227.48.

[5] Plaintiffs' claims related to the permit statements thus fail as well.  Br. 19 n.8.

[6] Vogt also said that remote human assistance provides customers "peace of mind knowing *there is always a human there to help* if needed."  Ex. 17 at 2.

statement that AVs must "handle the solutions it's going to see on the road in all cases, not just what's 98% of what you see," Opp'n 17; ¶ 80(a).[7]  But Barra did not say that Cruise AVs *never* required human input; she said that Cruise's *goal*—i.e., future, not present—was "to *take the driver out of the vehicle* safely."  Ex. 8 at 11.[8] *Second*, they cite the same Cruise (not GM) blog post discussed above, Ex. 18, but it too is consistent with statements throughout the class period making clear to any reasonable investor that "fully driverless" and "fully autonomous" meant operating "without a safety driver" in the vehicle.  Br. 15, 19–21; *supra* pp. 2–3.[9]

Plaintiffs focus on specific safety issues or examples of human intervention, but those do not make statements that Cruise AVs were driverless or autonomous false.  Opp'n 12.  Plaintiffs note that Cruise AVs: (1) initiated a remote assistance "session" every 2.5 to 5 miles; (2) failed frequently, requiring physical retrieval by humans; and (3) had certain safety issues.  *Id.* 19–28; ¶ 175.  But these allegations regarding sporadic technical issues do not negate that Cruise AVs could (and did) operate without a human driver in the vehicle and, therefore, they do not render

---

[7] "¶ __" refer to paragraphs of the Complaint, ECF No. 23 (PageID.240–445).

[8] Plaintiffs cannot claim this statement to be false, as they did not plead it in their complaint and "cannot amend [their] Complaint via a responsive brief." *Downing* v. *Foley & Lardner LLP*, 2010 WL 1494767, at *3 (E.D. Mich. 2010).

[9] Contrary to Plaintiffs' suggestion, Opp'n 16, the Court can consider the context provided by Barra's pre-class period statements. *See Lim* v. *Hightower*, 2024 WL 4349409, at *7 (N.D. Ohio 2024) (pre-class period statements are "relevant" to determining "whether Defendants misled the public given the totality of available information").

GM's "driverless" and "autonomous" statements false.  *Yum!*, 620 F. App'x at 491.

Plaintiffs attempt to manufacture fact disputes by taking statements out of context or proposing implausible meanings.  Opp'n 14.  The Court should reject that stratagem.  It is well established that considering the factual context of Defendants' statements, including context that defeats Plaintiffs' theory of falsity, "do[es] not create a factual dispute."  *Lim*, 2024 WL 4349409, at *7 (considering context of statements made on earnings call).[10]  Plaintiffs cite no Sixth Circuit cases saying otherwise.  And courts regularly dismiss claims as a matter of law based on facially implausible interpretations.  *See Plymouth Cty. Ret. Ass'n* v. *ViewRay, Inc.*, 2022 WL 3972478, at *4–6 (6th Cir. 2022) (interpreting statements "as a reasonable investor would"); *Gagnon* v. *Alkermes PLC*, 2019 WL 2866113, at *3 (S.D.N.Y. 2019) (rejecting implausible interpretation is not "truth-on-the-market defense").[11]

Plaintiffs cannot plead falsity by "peddling an implausible reading shorn of context."  *Gagnon*, 2019 WL 2866113, at *3.  But their allegations concerning

---

[10] Plaintiffs do not dispute that the Court must consider the exhibits attached to GM's motion, which are incorporated by reference into the Complaint and/or properly subject to judicial notice.  Br. at 12 n.4.

[11] Plaintiffs' cases are not to the contrary.  *WWE* provides that courts should interpret statements as "a reasonable investor" would.  *City of Warren Police & Fire Ret. Sys.* v. *World Wrestling Ent. Inc.*, 477 F. Supp. 3d 123, 130 (S.D.N.Y. 2020).  And in *IWA Forest Industry Pension Plan* v. *Textron Inc.*, the Second Circuit reversed because the district court required the plaintiff "to show that [its] reading was *superior* to the court's own benign reading" of the alleged misstatements.  14 F.4th 141, 147 (2d Cir. 2021).  Plaintiffs' interpretation of GM's statements is implausible—*not* one plausible reading among several.

autonomous function are just that, so Plaintiffs failed to carry their burden to allege falsity with particularity.  Br. 12–23.

**B.      Plaintiffs' New "Commercialization" Theory Fails**

Plaintiffs also claim that certain statements conveyed the incorrect impression that Cruise was ready to "begin operating, and scaling up, as a lucrative robotaxi business."  Opp'n 10.  None of these statements was made by GM so they cannot sustain a claim against GM.  But Plaintiffs' new theory suffers from additional flaws.

*First*, Plaintiffs' interpretation is belied by context.  GM repeatedly cautioned that it was "just the beginning" of the "path to commercialization," Ex. 14 at 12, and that Cruise was only "in the first turn of the race," Ex. 15 at 5.  The reports Plaintiffs rely upon reflect that, although "commercialization is coming," "commercializing autonomy via Cruise" required "*future actions* (through the *mid-2020s*)."  *E.g.*, Ex. 35 at 1.[12]  And Cruise's isolated, but widely reported, technical challenges requiring human intervention reinforced this understanding.  *See, e.g.*, ¶¶ 187–92; Br. 9–10.

*Second*, Plaintiffs do not allege facts that render the "commercialization"

---

[12] Plaintiffs' out-of-circuit cases, Opp'n 10, involved representations of present fact regarding commercialization, which were capable of being proven false, and are therefore inapposite.  *See In re QuantumScape Sec. Class Action Litig.*, 580 F. Supp. 3d 714, 725 (N.D. Cal. 2022) ("technology *is in fact ready* for commercialization"); *Constr. Indus. & Laborers Joint Pension Tr.* v. *Carbonite, Inc.*, 22 F.4th 1, 5 (1st Cir. 2021) ("we *have completely overhauled* the product").  And the *In re Energy Recovery Inc. Securities Litigation* court *dismissed* statements that revenue was "inevitable," where, as here, plaintiffs failed to plead facts showing that the statements were false when made.  2016 WL 324150, at *14 (N.D. Cal. 2016).

statements false.  That Cruise AVs occasionally required remote human input does not show Cruise could not "begin operating, and scaling up."  Opp'n 10.  Plaintiffs acknowledge Cruise's commercial expansion during the class period.  *E.g.*, ¶¶ 55–75.  While Cruise paused ride-hail operations *after* the October 2 collision, Plaintiffs plead no facts showing that statements made long before the pause were "false when made."  *Sinay* v. *Lamson & Sessions Co.*, 948 F.2d 1037, 1040 (6th Cir. 1991).

### C.      Plaintiffs' Safety-Related Allegations Fail

Plaintiffs cannot plead that GM's statements that Cruise AVs were safer than human-driven vehicles were false because they don't allege *facts about the safety of human drivers*.  Br. 22; *Lamontagne* v. *Tesla, Inc.*, 2024 WL 4353010, at *12 (N.D. Cal. 2024) ("[T]hat there were safety issues with the [AVs] does not suggest that it was false or misleading to assert that the technology was safer than regular human driving.").  The best Plaintiffs can do is cite scattershot allegations regarding Cruise AVs, and then assert, *ipse dixit*, that a "human who drives like this clearly is not a safer driver than most other humans."  Opp'n 34.  But the Complaint alleges no data or facts about the safety of human drivers to support this conclusory comparison. The Court "need not speculate [them] into existence."  *Yum!*, 620 F. App'x at 491.[13]

---

[13] Plaintiffs concede that two statements by Barra are inactionable as forward-looking statements unless Barra made them with actual knowledge of their falsity. Br. 23 n.10; Opp'n 33 n.10.  They do not allege such knowledge.  *Infra* pp. 10–12.

## II.    The Complaint Fails to Raise a Strong Inference of Scienter[14]

### A.    Cruise's Knowledge Cannot Be Imputed to GM

It is black-letter law that the state of mind of Cruise (or its employees) cannot automatically be imputed to its parent company.  Br. 29–30.  Plaintiffs' only contrary argument is two conclusory footnotes, neither of which cites legal authority.  Opp'n 7 n.2, 57 n.19.  Plaintiffs' imputation theory is unconvincing and forfeited.  *Cockrun* v. *Berrien Cty.*, 101 F.4th 416, 419 (6th Cir. 2024) (an "issue is deemed forfeited . . . if it is merely mentioned and not developed").  In any event, while scienter allegations are deficient as to Cruise, they are practically nonexistent as to GM.

### B.    The Complaint Does Not Allege That Any GM Defendant Knew Information Contradicting Their Statements

Plaintiffs cannot deny that this Circuit "analyze[s] scienter on a defendant-by-defendant basis," *Teamsters Loc. 237 Welfare Fund* v. *ServiceMaster Glob. Holdings, Inc.*, 83 F.4th 514, 526 (6th Cir. 2023), and fail to address GM's showing that the scienter allegations against each GM Defendant are insufficient to sustain a fraud claim.  Br. 24–29.  Contrary to Plaintiffs' argument, it is not sufficient to allege

---

[14] Plaintiffs' claim that the *Helwig* factors are no longer good law, Opp'n 36, is wrong.  Their own case shows that *Tellabs* overruled only *Helwig*'s "most plausible" standard—not reliance on the *Helwig* factors.  *See La. Sch. Emps.' Ret. Sys.* v. *Ernst & Young, LLP*, 622 F.3d 471, 480 (6th Cir. 2010).  Just recently, the Sixth Circuit reiterated it "normally rel[ies]" on the *Helwig* factors.  *JRS Partners, GP* v. *Leech Tishman Fuscaldo & Lampl, LLC*, 2024 WL 2874575, at *11 n.8 (6th Cir. 2024).  Plaintiffs' say they invoke five factors, Opp'n 37, but rewrite them.  Br. 24–25

that *someone* at GM or Cruise knew statements were false, because in the Sixth Circuit, a company is not liable where someone unrelated to the statements has scienter. *See In re Omnicare Sec. Litig.*, 769 F.3d 455, 477 (6th Cir. 2014).

**Barra**. The Opposition's only references to Barra's scienter are her (i) discussions with Ammann (a former GM executive), Opp'n 38, (ii) attendance at one annual meeting and Cruise board meetings, *id.* 39–40, and (iii) comment about Cruise's valuation, *id.* 41. "Completely absent is any detail about exactly what was discussed . . . . Without this information, the 'mere attendance at meetings' where [Cruise] was discussed does little to establish the kind of 'red flags' necessary to support a strong inference of scienter." *ServiceMaster*, 83 F.4th at 531.

**Jacobson**. Plaintiffs' only references to Jacobson's scienter are statements that (i) the "team's done a phenomenal job" and "the technology is really strong," Opp'n 38, and (ii) "Cruise is a key element of GM's growth strategy," *id.* 41. These "generalized" statements "do not establish" he was "intimately familiar" with AV technology. *Konkol* v. *Diebold, Inc.*, 590 F.3d 390, 402 (6th Cir. 2009); Br. 28–29.

**Parks**. The only discussion of Parks' scienter is that he left GM, without any reference to pleaded facts suggesting his departure was "suspicious." Opp'n 45–46.

**Generalized Allegations**. Plaintiffs say Defendants were "hands-on" and "touted their deep involvement." Opp'n 37–38. Neither allegation passes muster. In *Indiana Electric Workers' Pension Trust Fund IBEW* v. *Shaw Group, Inc.*,

allegations of a defendant's "hands-on management style" "coupled with his alleged boast that 'there is nothing in this company that I don't know,' were insufficient to support a strong inference of scienter." 537 F.3d 527, 535 (5th Cir. 2008).[15]

Plaintiffs say unnamed defendants had "access to key reports and information," Opp'n 38–41, but scienter "cannot be inferred merely from . . . alleged access to information" because Plaintiffs "must allege specific facts or circumstances suggestive of their knowledge." *PR Diamonds, Inc.* v. *Chandler*, 364 F.3d 671, 688 (6th Cir. 2004); Br. 27.[16] Plaintiffs do not address *Chandler* and their only attempt to distinguish GM's other cases is saying that they "detail[] specific information that Individual Defendants accessed." Opp'n 38–39 n.12 (citing ¶¶ 175, 394–96). But they have no such allegations about Barra, Jacobson, or Parks. *Id.*

Plaintiffs ignore—and thus concede—GM's central critique of their CW allegations: none "discuss what any GM Defendant allegedly knew." Br. 26–27;

---

[15] The *Palazzolo* v. *Fiat Chrysler Automobiles N.V.* court found scienter because defendants misstated revenue for a year after the internal investigation *they ordered* revealed thousands of fraudulent sales—not because of an executive's management style. 2017 WL 6389573, at *9 (E.D. Mich. 2017) (cited at Opp'n 37–38).

[16] Plaintiffs in *Shupe* v. *Rocket Companies, Inc.*—unlike here—pleaded the actual report's content particular defendants saw. 660 F. Supp. 3d 647, 679 (E.D. Mich. 2023). Plaintiffs' quote from *Winslow* v. *BancorpSouth, Inc.*, 2011 WL 7090820, at *23 (M.D. Tenn. 2011), is from a Ninth Circuit case that is inconsistent with this Circuit's rule that "careful monitoring of the very areas in which [the company] committed accounting violations" do not "do much to support an inference that the Individual Defendants knew or should have known about the specific accounting problems alleged in the Complaint." *Chandler*, 364 F.3d at 688–89.

11

Opp'n 40.  None of the CWs purport to say anything about what any individual defendant knew when he or she made the statements, making the CWs irrelevant to the scienter inquiry, regardless of the CWs' positions.  *City of Pontiac Gen. Employees' Ret. Sys.* v. *Stryker Corp.*, 865 F. Supp. 2d 811, 834 n.9 (W.D. Mich. 2012) (whether "CWs had personal knowledge of the information they provided" was "not the point" because "the CWs cannot testify as to what Defendants knew").[17]

Finally, Plaintiffs argue that "it is fair to infer that Defendants were aware of information" because they "ma[de] public assertions."  Opp'n 42–43.  If that were true, scienter would always be pleaded when falsity was.  But they are separate elements that both must be pleaded.  *Doshi* v. *Gen. Cable Corp.*, 823 F.3d 1032, 1042 (6th Cir. 2016) (no scienter despite "materially false public" statements).

### C.     The Core Operations Inference Is Inapplicable

Recognizing there are no direct allegations of scienter, Plaintiffs argue that the Court can "presume[]" that defendants are "aware of matters central to Cruise's and GM's business."  Opp'n 40–41.  Plaintiffs fail to grapple with this Circuit's rule that "the fact that executives are intimately familiar with a core component of their business does little to suggest fraudulent intent."  *ServiceMaster*, 83 F.4th at 531;

---

[17] Without citing any authority, Plaintiffs argue that pleading that CW-8 had a "senior role" is sufficient.  Opp'n 40.  They ignore GM's cited authority saying that CW accounts are "steeply discounted" where only a title is pleaded (which Plaintiffs do not even do for CW-8).  Br. 25 (quoting *Omnicare*, 583 F.3d at 946).

*see also Pittman* v. *Unum Grp.*, 861 F. App'x 51, 55 (6th Cir. 2021) (knowledge of core operations is "not a scienter-bolstering fact"); *Yum!*, 620 F. App'x at 492 (no scienter though safety test results were from "core" of business).[18]

Plaintiffs selectively quote *In re Cardinal Health Inc. Sec. Litig.*, which held scienter was not pleaded because the "Complaint itself must allege specific facts or circumstances reflecting the Individual Defendants' knowledge." 426 F. Supp. 2d 688, 724 (S.D. Ohio 2006); Opp'n 40–41.[19] There are no such specific facts here.

### D. Plaintiffs' "Additional Allegations" Do Not Support Scienter

Plaintiffs point to a handful of "additional allegations" they say support scienter, Opp'n 43–49, but these allegations say nothing about whether GM or the GM Individual Defendants intended to defraud investors. These "additional allegations"—that "many employees" knew something or that information was "widespread," executive departures, purported "admissions," and a "pattern of

---

[18] Plaintiffs say Cruise is more important to GM than the subsidiary in *ServiceMaster* was to its parent, Opp'n 41 n.13, but ignore that the subsidiary there "accounted for approximately 87% of [the parent's] revenues," 83 F.4th at 519, compared to 0.06% for Cruise, Br. 4. And despite Plaintiffs' claim, the Sixth Circuit found no scienter where the *Yum!* plaintiffs—like Plaintiffs here—attempted to plead scienter through (i) the core operations inference, (ii) "statements discussing the issues," and (iii) defendants' "close attention" to the issues. 620 F. App'x at 492.

[19] The *Frank* v. *Dana Corp.* court found scienter where the defendants made "extremely optimistic statements" about the company's "profitability and growth," notwithstanding that "one of their key product lines was operating at fifty percent of earnings, multiple factories failed to meet their budgets, and the price of steel rose seventy-five to 120 percent." 646 F.3d 954, 957, 961–62 (6th Cir. 2011). The stock dropped 35% and the company declared bankruptcy shortly thereafter. *Id.* at 958.

13

deception and recklessness"—concern only Cruise. Opp'n 44–49. Setting aside their invalidity on the merits, Plaintiffs plead no facts linking these events to GM or any its employees, which renders them irrelevant to GM's scienter. *See supra* p. 9.[20]

### E. GM's Inference Is "More Compelling"

It is undisputed that GM purchased its own stock and Cruise's stock. Plaintiffs do not address the cases holding that such purchases negate an intent to commit fraud. Br. 30–31; Opp'n 48–49.[21] Further, *each* GM Defendant acquired more stock than they sold during the class period, Exs. 36–38,[22] "undermin[ing] any inference of scienter." *I.B.E.W.* v. *Ltd. Brands, Inc.*, 788 F. Supp. 2d 609, 631 (S.D. Ohio 2011). These trades weigh against scienter as part of the "inherently comparative" analysis. *Tellabs, Inc.* v. *Makor Issues & Rts., Ltd.*, 551 U.S. 308, 323 (2007).

Similarly, Plaintiffs do not cite *a single authority* contesting that GM's disclosures weigh against scienter. Opp'n 50–51. Instead, they say that certain ones are "vague" or "inadequate," *id.*, but ignore that Cruise and GM regularly publicized

---

[20] Plaintiffs' cases are inapposite. In *Bond*, the defendants "admit[ted] that they were aware of the DOJ investigation during the Class Period and engaged in a considered process of determining whether to disclose it." *Bond* v. *Clover Health Invs., Corp.*, 587 F. Supp. 3d 641, 677 (M.D. Tenn. 2022). And in *Cardinal Health*, defendants were alleged to have engaged in eight separate accounting frauds, 426 F. Supp. 2d at 723 n.48, unlike the single alleged subject of a misstatement here.

[21] Plaintiffs' two out-of-circuit cases, Opp'n 49–50, do not dispute that stock purchases negate scienter; they merely hold they are not always dispositive.

[22] "Form 4s are filed with the SEC and publicly accessible, and an objectively reliable source, making them subject to judicial notice." *Lim*, 2024 WL 4349409, at *7 & n.2 (citing cases).

information on remote operators, including in Cruise's Safety Report, Ex. 22 at 106–32, and Vogt's statements that remote operators provide "customers peace of mind knowing *there is always a human there to help* if needed," Ex. 17 at 2; *see also, e.g.*, Ex. 16 at 2; ¶¶ 188–91.  Allegations of fraudulent intent thus make no sense.

## III.  The Complaint Fails to Plead Loss Causation

Plaintiffs fail to plead loss causation with particularity, which requires dismissal.  *ServiceMaster*, 83 F.4th at 525.  Each alleged corrective disclosure fails:

- October 24: Plaintiffs' only response to GM's showing that the information was previously disclosed, Br. 32–33, is that Cruise said it had "nothing further to add."  Opp'n 53.  Declining to comment is not denying a report and it does not matter whether the "public information" was previously released by the defendant or a third party.  *In re KBC Asset Mgmt. N.V.*, 572 F. App'x 356, 360 (6th Cir. 2014).

- October 26: Plaintiffs argue that Cruise's operations pause was a "clear indicator" that Cruise AVs could not operate safely.  Opp'n 54.  But that is unsupported by *any* alleged facts.  And NHTSA investigating two additional incidents of hard braking a year after disclosing its initial investigation is not material new information.  Br. 33–34.

- October 28: Plaintiffs cite no authority showing that announcing that a publicly known issue has been resolved established loss causation.

### CONCLUSION[23]

The Court should dismiss the Complaint with prejudice.

---

[23] Plaintiffs neither dispute that Rules 10b-5(a) and (c) "require[] something beyond misstatements and omissions," nor that the Complaint lacks such allegations against the GM Defendants.  Br. 34; Opp'n 70 n.24.  This claim is waived.  Also, Plaintiffs agree that absent a primary violation, their claims under Section 20(a) must also be dismissed.  *Doshi*, 823 F.3d at 1045; Opp'n 56 n.18.

DATED: November 15, 2024

Respectfully submitted,

/s/ Roger P. Meyers

Daniel J. Kramer (N.Y. 1979392)
Andrew J. Ehrlich (N.Y. 4103909)
Richard C. Tarlowe (N.Y. 4122677)
Kristina A. Bunting (N.Y. 5510847)
**PAUL, WEISS, RIFKIND,**
  **WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
dkramer@paulweiss.com
aehrlich@paulweiss.com
rtarlowe@paulweiss.com
kbunting@paulweiss.com

Stephanie A. Douglas (P70272)
Roger P. Meyers (P73255)
**BUSH SEYFERTH PLLC**
100 W. Big Beaver Rd. Suite 400
Troy, MI 48084
Telephone: (248) 822-7800
douglas@bsplaw.com
meyers@bsplaw.com

*Counsel for the GM Defendants*

16