**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

|  |  |
|---|---|
| IN RE GENERAL MOTORS COMPANY SECURITIES LITIGATION | Case No. 4:23-cv-13132-SDK-EAS<br><br>District Judge Shalina D. Kumar<br><br>Magistrate Judge Elizabeth A. Stafford<br><br>**(Oral Argument Requested)** |

**REPLY IN SUPPORT OF CRUISE DEFENDANTS'**
**MOTION TO DISMISS PURSUANT TO**
**FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) and 9(b)**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................................ii

PRELIMINARY STATEMENT........................................................................1

ARGUMENT....................................................................................................3

I.    The Accident Statement Claims Should Be Dismissed............................3

    A.    Plaintiffs Fail to Allege a Strong Inference of Scienter....................3

    B.    The Accident Statements Were Not Made in Connection with the Purchase or Sale of Securities.................................................6

    C.    The Accident Statements Did Not Cause a Loss............................7

II.    The Technology Statement Claims Should Be Dismissed.........................8

    A.    Plaintiffs Do Not Adequately Allege Falsity..................................8

    B.    Plaintiffs Fail to Allege Scienter. ...............................................12

III.    Leave to Amend Should Be Denied.......................................................15

CONCLUSION.................................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bond v. Clover Health Invs., Corp.*,
587 F. Supp. 3d 641 (M.D. Tenn. 2022)......................................................13

*Buhrke Family Revocable Tr. v. U.S. Bancorp*,
2024 WL 1330047 (S.D.N.Y. Mar. 28, 2024).................................................8

*In re Cardinal Health Inc. Secs. Litig.*,
426 F. Supp. 2d 688 (N.D. Ohio 2006)........................................................13

*In re Carter-Wallace Inc. Secs. Litig.*,
150 F.3d 153 (2d Cir. 1998).........................................................................7

*Cates v. Crystal Clear Techs., LLC*,
874 F.3d 530 (6th Cir. 2017).......................................................................5

*Chamberlain v. Reddy Ice Holdings, Inc.*,
757 F. Supp. 2d 683 (E.D. Mich. 2010)................................................ 4, 13

*Constr. Indu. & Laborers Joint Pension Tr. v. Carbonite, Inc.*,
22 F. 4th 1 (1st Cir. 2021) ...........................................................................9

*Doshi v. Gen. Cable Corp.*,
823 F.3d 1032 (6th Cir. 2016).....................................................................4

*Dougherty v. Esperion Therapeutics, Inc.*,
905 F.3d 971 (6th Cir. 2018)........................................................................4

*In re Energy Recovery Inc. Secs. Litig.*,
2016 WL 324150 (N.D. Cal. Jan. 27, 2016)..................................................9

*In re Equifax Inc. Secs. Litig.*,
357 F. Supp. 3d 1189 (N.D. Ga. 2023).........................................................7

*In re Firstenergy Corp.*,
2022 WL 681320 (S.D. Ohio Mar. 7, 2022).................................................13

*Frank v. Dana Corp.*,
646 F.3d 954 (6th Cir. 2011)......................................................................13

*Grillo v. Tempur-Pedic Int'l, Inc.*,
  553 F. Supp. 2d 809 (E.D. Ky. 2008).........................................................15

*U.S. ex rel. Harper v. Muskingum Watershed Conservancy Dist.*,
  739 F. App'x 330 (6th Cir. 2018) ..............................................................15

*Harris v. AmTrust Fin. Servs., Inc.*,
  135 F. Supp. 3d 155 (S.D.N.Y. 2015) ........................................................15

*Klein v. Altria Grp., Inc.*,
  525 F. Supp. 3d 638 (E.D. Va. 2021) ...........................................................7

*Konkol v. Diebold*,
  590 F.3d 390 (6th Cir. 2009)......................................................................12

*Lamontagne v. Tesla, Inc.*,
  2024 WL 4353010 (N.D. Cal. Sept. 30, 2024)............................................14

*Lindblom v. Mobile Telecomms. Techs. Corp.*,
  985 F. Supp. 161 (D.D.C. 1997)...................................................................6

*Monk v. Johnson & Johnson*,
  2011 WL 6339824 (D. Del. Mar. 31, 2016) ..................................................6

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
  575 U.S. 175 (2015) ...................................................................................10

*Pittman v. Unum Grp.*,
  861 F. App'x 51 (6th Cir. 2021)..................................................................13

*Plagens v. Deckard*,
  2023 WL 2711263 (N.D. Ohio Mar. 30, 2023).............................................5

*PR Diamonds, Inc. v. Chandler*,
  364 F.3d 671 (6th Cir. 2004).........................................................................4

*In re QuantumScape Secs. Class Action Litig.*,
  580 F. Supp. 3d 714 (N.D. Cal. 2022)...........................................................9

*Roberti v. OSI Sys., Inc.*,
  2015 WL 1985562 (C.D. Cal. Feb. 27, 2015)..............................................13

iii

*Ronconi v. Larkin*,
    253 F.3d 423 (9th Cir. 2001).................................................................15

*In re Reserve Fund Secs. & Derivative Litig.*,
    732 F. Supp. 2d 310 (S.D.N.Y. 2010) .......................................................7

*Sapssov v. Health Mgmt. Assocs., Inc.*,
    22 F. Supp. 3d 1210 (M.D. Fla. 2013).....................................................13

*SEC v. Pirate Inv'r LLC*,
    580 F.3d 233 (4th Cir. 2009).................................................................7

*Shupe v. Rocket Cos., Inc.*,
    660 F. Supp. 3d 647 (E.D. Mich. 2023)....................................................6

*In re Skechers USA, Inc. Secs. Litig.*,
    444 F. Supp. 3d 498 (S.D.N.Y. 2020) .....................................................11

*Sterling Heights Police & Fire Ret. Sys. v. Reckitt Benckiser Grp.
    PLC*,
    587 F. Supp. 3d 56 (S.D.N.Y 2022)..........................................................6

*Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings,
    Inc.*, 83 F.4th 514 (6th Cir. 2023)  .................................................... 5, 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ..................................................................... 3, 12

*United States v. Stewart*,
    628 F.3d 246 (6th Cir. 2010)......................................................... 6, 15

*Wildes v. BitConnect Int'l PLC*,
    25 F.4th 1341 (11th Cir. 2022)..............................................................6

iv

## PRELIMINARY STATEMENT[1]

Plaintiffs' brief is premised on the incorrect notion that Defendants have conceded the falsity of certain **Technology Statements**. Opp. at 1. In fact, Defendants expressly challenged the falsity of all those alleged misrepresentations, *see* Cruise Br. at vii, 5–9, 28; GM Br. at 12–23, including all the statements highlighted in Plaintiffs' brief, *see* Cruise Br. at 5–9.

Based on this non-existent concession, Plaintiffs posit a new theory of fraud. They now argue—contrary to the AC—that the **Technology Statements** were false because they conveyed "that Cruise's AV technology had reached the point where Cruise could already operate a revenue generating, fully driverless robotaxi business without any additional [research and development.]" Opp. at 9. But Plaintiffs overread and mischaracterize Cruise's statements about "commercialization." Far from making expansive promises that it would earn revenues shortly, Cruise made measured statements about transitioning from pure research and development to initial testing and deployment. These statements were not actionable, and as Cruise explained in its moving brief, they were also ***accurate***—Cruise had begun testing its vehicles on public roads and offering rides to the public. Cruise Br. at 5–9, 28.

---

[1] This Brief uses defined terms and abbreviations set forth in the moving briefs and incorporates the GM Defendants' briefs by reference. "Cruise Br." refers to the Cruise Defendants' moving brief, ECF No. 32 (PageID.1285–1335) and "GM Br." refers to the GM Defendants' moving brief, ECF No. 31 (PageID.480–526). "Opp." refers to Plaintiffs' opposition brief, ECF No. 39 (Page.ID2278–2368).

Plaintiffs also now focus on two Cruise statements that there was no "human in the loop," arguing that Cruise has conceded this phrase falsely conveyed the absence of remote assistance. Opp. at 14. In fact, those statements truthfully conveyed the absence of a human safety driver *in the car*. Cruise Br. at 6. As with the commercialization statements, Defendants' briefs specifically explained why these statements were truthful. Cruise Br. at 6; GM Br. at 19–22.

Once Plaintiffs' efforts to suggest fabricated concessions are cast aside, Plaintiffs are left with the pleading flaws identified in Defendants' initial briefs: Defendants made accurate factual statements about the technology's Level 4 driverless capacity, and Defendants' statements about safety were limited, cautionary, and truthful. GM Br. at 9–23; Cruise Br. at 5–9, 28. Far from involving false promises about Defendants' products or finances, this is simply a case where a revolutionary technology suffered a setback—an obvious possibility that Defendants had previously acknowledged. That is not securities fraud. All the **Technology Statement** claims should be dismissed for failure to plead falsity and scienter.

Plaintiffs also fail to salvage their **Accident Statement** claims. Plaintiffs ignore that their own allegations provide the non-culpable reasons for Cruise's delayed disclosure of the pedestrian dragging, and fall woefully short of alleging either a connection to securities transactions or loss causation.

For all these reasons, the AC should be dismissed with prejudice.

2

## ARGUMENT

### I.     The Accident Statement Claims Should Be Dismissed.

The Accident Statement Claims are facially deficient. Cruise's delayed disclosure of the pedestrian dragging was not made with intent to defraud GM investors, had nothing to do with sales of GM stock, and caused no loss to investors.

### A.     Plaintiffs Fail to Allege a Strong Inference of Scienter.

**Corporate Scienter.** Plaintiffs argue Cruise made the Accident Statements to avoid "exposing deficiencies" in its AVs. Opp. at 1. But Plaintiffs offer no facts that would make this theory of fraudulent intent more compelling than the non-culpable inference that follows from Plaintiffs' own allegations: Cruise delayed disclosing the pedestrian dragging to the public because Cruise leadership originally did not even know about it, and then prioritized gathering information and correcting erroneous reports that a Cruise AV caused the Accident. The nail in the coffin is that Cruise disclosed the dragging to certain regulators within hours of making incomplete disclosures to others—showing that it did not intend to hide this unfortunate incident from investors. Cruise Br. at 18–19.

Plaintiffs argue that the Court should disregard these non-culpable explanations on the theory that Cruise's "motive" behind alleged misstatements is "irrelevant" to scienter. Opp. at 2, 59–60. That is not the law. Courts "must" consider "nonculpable" motives when evaluating scienter, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323–24 (2007), and routinely "distinguish

3

motives common to corporations and executives generally from motives to commit fraud," *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 690 (6th Cir. 2004).  As a result, an employee's mere access to information contradicting public statements is insufficient to establish scienter.  Cruise Br. at 19 (discussing *Doshi v. Gen. Cable Corp.*, 823 F.3d 1032 (6th Cir. 2016), which Plaintiffs do not address).  By contrast, Plaintiffs' cited cases involved far more than an entity's mere failure to immediately disclose a fact known to some employees. *See Dougherty v. Esperion Therapeutics, Inc.,* 905 F.3d 971, 980–82 (6th Cir. 2018) (five *Helwig* factors supported scienter and no innocent inference); *Chamberlain v. Reddy Ice Holdings, Inc.*, 757 F. Supp. 2d 683, 712–13 (E.D. Mich. 2010) (defendants "conceal[ed]" illegal agreements).

Plaintiffs also argue that Cruise admitted a motive to "minimize bad press," which Plaintiffs deem "paradigmatic" securities fraud.  Opp. at 68–69.  That twists Cruise's argument.  Cruise did not immediately update its Press Release so it could conduct a thorough investigation first and avoid issuing multiple corrections—a careful approach courts have blessed.  Cruise Br. at 21.

**Vogt.**  Plaintiffs' scienter allegations as to Vogt are flawed for the same reasons, and then some.  The claims against him are based on certain statements made while Vogt was "unaware" of the pullover maneuver. *Id.* at 12, 21 (quoting Ex. 13 at 27).  Other statements upon which Plaintiffs' claims are based, *see* Opp. at 57–58, were made without his involvement, *see* Ex. 13 at 32.  Plaintiffs' contention

4

that Vogt "learned the truth immediately after the crash," Opp. at 60 n.20, should be rejected; it is inconsistent with the Quinn Report, Ex. 13 at 27 (Vogt "unaware"), and unsupported by any other allegations, *see Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 536 (6th Cir. 2017) (document incorporated in complaint governs).

Vogt's remark shortly after midnight on October 3, 2023, that he wanted to see and authorize the Bullet Points and the Press Release does not help Plaintiffs. At the time, Vogt was unaware of the pedestrian dragging because then-available video footage of the Accident *did not capture the pullover maneuver*. Cruise Br. at 12–13. And Plaintiffs' claim that Vogt played a role in the Accident Statements *after* learning about the pullover maneuver distorts his remark to mean that he wanted to authorize *all* media statements. *See* Opp. at 60–61. The Quinn Report contradicts this distortion. *See* Ex. 13 at 26–27, 32 (Vogt "involved in the drafting" of initial Press Release when "unaware" of dragging, whereas "[c]ommunications members" circulated Bullet Points). That leaves Plaintiffs with the timing of Vogt's resignation, *see* Opp. at 64, which "d[oes] not, without more, give rise to a strong inference of scienter," *Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*, 83 F.4th 514, 531 (6th Cir. 2023).[2]

**Ammann and West.** Plaintiffs abandon their Accident Statement claims

---

[2] Plaintiffs' own authority shows that even an executive's unusual resignation in connection with a regulatory investigation weighs only "slightly" in favor of scienter. *Plagens v. Deckard*, 2023 WL 2711263, at *29 (N.D. Ohio Mar. 30, 2023).

against Ammann (who left Cruise in 2021, years before the Accident) and West by failing to respond to Cruise's arguments. *See* Cruise Br. at 22–23; *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010).

## B. The Accident Statements Were Not Made in Connection with the Purchase or Sale of Securities.

Plaintiffs' argument that the Accident Statements were made "in connection with the purchase or sale" of securities fails to address the facts here, which are strikingly similar to those in *Lindblom v. Mobile Telecomms. Techs. Corp.*, 985 F. Supp. 161 (D.D.C. 1997). In that case, the court held that a non-issuer subsidiary's statements about its own products, which do not "make[] any mention whatsoever of financial data or relate[] the product in any way to [the parent's] profitability," are not actionable. *Id.* at 164. *Lindblom* cannot be dismissed as a "fact-specific analysis," Opp. at 68, given its parallels to the facts here, and its obvious logic.

Nor do Plaintiffs' extensive citations to other cases demonstrate that *Lindblom* is an outlier. Many of Plaintiffs' cases do not even address the "in connection with" element, which was satisfied in those cases because they involved statements by public companies about their finances—unlike here.[3] The rest involved statements

---

[3] *See Shupe v. Rocket Cos., Inc.*, 660 F. Supp. 3d 647, 674 (E.D. Mich. 2023) (tweets about company's market share); *Wildes v. BitConnect Int'l PLC*, 25 F.4th 1341, 1346 (11th Cir. 2022) (online videos soliciting securities purchases); *Sterling Heights Police & Fire Ret. Sys. v. Reckitt Benckiser Grp. PLC*, 587 F. Supp. 3d 56, 91 (S.D.N.Y 2022) (statements about market share during analyst call); *Monk v.*

6

by or claims against *the issuer*, not the subsidiary, primarily in investor settings, and about systemic issues with the issuer's business, not details of a single incident. [4]

Thus, Plaintiffs cite no case for the proposition that a non-issuer subsidiary's statements about a subsidiary-specific incident, without any mention of the issuer parent, can satisfy this element of a securities fraud claim. [5] If it did, then any statement by any subsidiary of any public company in any circumstance could lead to liability. That result would be unprecedented—and unworkable.

### C.     The Accident Statements Did Not Cause a Loss.

In response to Cruise's argument that the Accident Statements did not cause Plaintiffs' alleged losses because *Forbes* reported the pullover maneuver *weeks before* any alleged corrective disclosure, Cruise Br. at 27–28, Plaintiffs contend that the *Forbes* article should not be considered a disclosure because Cruise's statement in the article "contradicted" the report, Opp. at 69. The article's plain text says otherwise: "When Forbes asked Cruise to specifically respond to [the] allegation that

---

*Johnson & Johnson*, 2011 WL 6339824, at *21 (D. Del. Mar. 31, 2016) (lies to Congress about recall of drugs); *In re Reserve Fund Secs. & Derivative Litig.*, 732 F. Supp. 2d 310, 314 (S.D.N.Y. 2010) (statements to prevent redeeming securities).
[4] *See In re Equifax Inc. Secs. Litig.*, 357 F. Supp. 3d 1189, 1251 (N.D. Ga. 2023) (statements by issuer's CEO about issuer's "core business operation"); *Klein v. Altria Grp., Inc.*, 525 F. Supp. 3d 638, 658 (E.D. Va. 2021) (statements in parallel press releases in context of issuer's investment in subsidiary); *In re Carter-Wallace Inc. Secs. Litig.*, 150 F.3d 153, 156 (2d Cir. 1998) (issuer's drug marketing).
[5] The fraud-on-the-market theory, *see* Opp. at 65, does not moot this element, *see, e.g., SEC v. Pirate Inv'r LLC*, 580 F.3d 233, 249 (4th Cir. 2009).

the AV 'dragged' the woman, causing her to be injured further, the company said that it had nothing further to add." Ex. 15.  That is not a denial.  Because the dragging was disclosed, any subsequent disclosure would not have had a price impact.

## II.   The Technology Statement Claims Should Be Dismissed.

### A.   Plaintiffs Do Not Adequately Allege Falsity.

As detailed primarily in GM's briefing, the AC does not adequately allege that the Technology Statements were false because the AC fails to allege either that Cruise's AVs were not Level 4 or were less safe than human drivers.  *See* GM Br. at 12–22; GM Reply at 2–8.  Unable to rebut Defendants' arguments regarding their pleaded theories of falsity, Plaintiffs claim Defendants conceded falsity.  Opp. at 1.  But Defendants' briefing expressly explained why *every* Technology Statement was "truthful, like the ones above."  Cruise Br. at vii, 5–9, 28; GM Br. at 9–23.[6]

Some of the statements about which Cruise has supposedly conceded falsity concerned the status of Cruise's efforts to commercialize its AV technology.  Opp. at 1, 3.  Cruise's statements on this topic were not nearly as specific or expansive as Plaintiffs posit.  Cruise did not make definitive statements about the capability of its technologies or about its timeline to earn revenues.  Rather, Cruise stated only that it had Level 4 technology ***that it could begin commercializing***," ¶ 331 (emphasis

---

[6] In any event, Defendants were not required to address "every single allegation" in Plaintiffs' 200-page AC "in detail."  *Buhrke Family Revocable Tr. v. U.S. Bancorp*, 2024 WL 1330047, at *9 n.8 (S.D.N.Y. Mar. 28, 2024).

added), and repeatedly emphasized the preliminary nature of the technology at that time, *see* Cruise Br. at 5–7 (*e.g.*, Cruise was "very close" to offering driverless rides; "working on building" a driverless system; "very, very early stages" of deploying AVs; "basically" no "incremental work" from a "technical standpoint" to reach revenue given "certain use cases" where AVs were Level 4). Analysts understood that Cruise was only in "***early commercialization***," and "***starting small***." ¶ 81; Ex. 18 (BofA) at 1; Ex. 19 (J.P. Morgan) at 3; Ex. 20 (RBC) at 7 (emphasis added).

These statements are too vague and too forward-looking to be actionably false, a principle applied repeatedly even in the "false commercialization" cases Plaintiffs cite. Opp. at 10. *See In re Energy Recovery Inc. Secs. Litig.*, 2016 WL 324150, at *14, 17 (N.D. Cal. Jan. 27, 2016) (statements "too vague to be false"); *In re QuantumScape Secs. Class Action Litig.*, 580 F. Supp. 3d 714, 740 (N.D. Cal. 2022) ("corporate hype" inactionable puffery). By contrast, the misrepresentations sustained in those cases involved much more definitive statements—which were susceptible to being proven false. *See QuantumScape*, 580 F. Supp. 3d at 740 (statements concerning current testing of batteries compared to other batteries that couldn't be "more specific"); *Energy Recovery*, 2016 WL 324150, at *21 (statements detailing purported agreements and testing). Plaintiffs' final case involved patently false statements regarding a product's current competitiveness— not future capabilities—and is thus inapposite. *See Constr. Indu. & Laborers Joint*

9

*Pension Tr. v. Carbonite, Inc.*, 22 F. 4th 1, 5 (1st Cir. 2021) (product "completely competitive" and "super strong" though it actually "never worked").

Plaintiffs also ignore the full context of Cruise's statements, including Cruise's express caution to investors about the "unique technological, operational, regulatory and competitive risks related to the timing and commercialization of autonomous vehicles." Ex. 3 at 2. Far from asserting that Cruise would not face any technological challenges once it began to commercialize its AVs, Cruise said the opposite—belying any claim of falsity. *See Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 190 (2015).

Plaintiffs try to bolster their commercialization theory by contending that, because Cruise AVs initiated remote assistance sessions 2–4% of the time, the technology was not ready for deployment. Opp. at 20. That argument misconstrues the AC's allegations about the scope and significance of remote assistance. The remote assistance team did not intervene in the driving operation or otherwise take control of the vehicles. The AVs merely *queried* remote assistance personnel for input, with "many" queries being "resolved by the AV" without human input or in "seconds." ¶ 175. This limited remote human assistance did not show a flaw in the AV technology; to the contrary, it was an important feature—which Cruise repeatedly highlighted to the public. *See* Cruise Br. at 6, 8; GM Br. at 15.

Plaintiffs also contend that Cruise conceded falsity as to then-CEO Ammann's

10

comment that Cruise took "the human out of the loop."  ¶¶ 282, 284; *see* Opp. at 12–13.  Not so.  As set forth in Defendants' moving briefs, the phrase "human out of the loop" conveyed the absence of a safety driver in the AV, not the absence of any human involvement.   Ammann made this clear by saying during the same presentation that Cruise's AVs sometimes required remote intervention.  Cruise Br. at 6; Ex. 2 at 41, 44 (discussing "interve[ntion]" and "incident" rates and distinguishing Cruise's AVs from those requiring "a safety driver").

Plaintiffs repeatedly cite a single analyst report as purported evidence that the market understood Ammann to have conveyed that Cruise's AVs currently operated "without remote assistance" of any kind.  Opp. at 15.  But the report did not say that—it merely noted GM's "expect[ation]" that Cruise's AVs could provide licensed "Level 4" services by early 2022. Ex. 21 at 10.  Indeed, none of the analyst reports cited in the AC, *see* ¶ 81, relays the absence of remote operators.  Instead, analysts understood that "human out of the loop" simply means "the ability to take the driver out" of "L4/5" AVs.  Ex. 20 at 6.  Even assuming any report conveyed what Plaintiffs say, the misunderstanding of a single analyst is "irrelevant" where, as here, "the statements at issue are clear on their face" when viewed "in context." *In re Skechers USA, Inc. Secs. Litig.*, 444 F. Supp. 3d 498, 520–21 (S.D.N.Y. 2020).

In sum, Defendants addressed each of the 45 Technology Statements pleaded in the AC, none of which was false.

11

### B.      Plaintiffs Fail to Allege Scienter.

Plaintiffs' grab-bag of scienter arguments does not establish a more "cogent and compelling inference," *Tellabs*, 551 U.S. at 324, that Cruise made the Technology Statements to defraud.   Rather, Cruise's public disclosures of safety-related risks and remote operators—which Plaintiffs ignore—demonstrate a more compelling inference: that Cruise suffered the type of setback that was always possible when developing a revolutionary technology in a context where occasional accidents are unavoidable.  *See Teamsters*, 83 F.4th at 529.

Plaintiffs nevertheless insist that Cruise executives had access to reports, databases, and CW information demonstrating general "safety issues and risks" that supposedly establish a "widespread" fraud indicative of scienter.   Opp. at 37–46. But none of that information has anything to do with the truth or falsity of the specific statements challenged here.  Plaintiffs acknowledge that ***none*** of the reports or CWs establish that Cruise's AV technology was not Level 4, that it was less safe than human drivers, or that it was not in the very early stages of being commercialized.[7]   Courts routinely "discount" such vague murmurs from CWs unmoored from the allegedly false statements at issue.  *Konkol v. Diebold*, 590 F.3d

---

[7] The CWs' allegations as to remote assistance operators are irrelevant because such operators were required under California law and consistent with Level 4 capabilities.  *See* Cruise Br. at 30; GM Br. at 13–15; GM Reply at 2–7.

390, 399 (6th Cir. 2009).

The argument is even more obviously unavailing as to Ammann, since, as Plaintiffs concede, *all* the CW Statements' reports post-date Ammann's departure in 2021.  Thus, they are irrelevant to evaluating his scienter.  Cruise Br. at 31 n.9.

Similarly, Plaintiffs' invocation of the core operations theory "does little to suggest fraudulent intent." *Pittman v. Unum Grp.*, 861 F. App'x 51, 55 (6th Cir. 2021).  Plaintiffs' own authority, *see* Opp. at 40–41, shows that scienter *cannot* be inferred merely from [defendants'] positions in the [c]ompany and alleged access to information," *In re Cardinal Health Inc. Secs. Litig.*, 426 F. Supp. 2d 688, 724 (S.D. Ohio 2006) (such allegations failed to plead a strong inference of scienter).[8]

Nor is this a case where the *Helwig* factors support a strong inference of scienter.[9]  Crucially, Plaintiffs do not allege any "self-interested motivation" by Cruise Defendants.  Opp. at 37.  As for the remaining factors Plaintiffs purport to

---

[8] Plaintiffs' other authority is distinguishable. *See, e.g.*, *Frank v. Dana Corp.*, 646 F.3d 954, 962 (6th Cir. 2011) (supposed "gangbuster earnings" while actually "spiraling toward bankruptcy"); *In re Firstenergy Corp.*, 2022 WL 681320, at *22–24 (S.D. Ohio Mar. 7, 2022) ("unusually strong financial motive" to commit fraud and "suspicious stock trading"); *Roberti v. OSI Sys., Inc.*, 2015 WL 1985562, at *12 (C.D. Cal. Feb. 27, 2015) ("detailed" statements contradicted specific "data"); *Bond v. Clover Health Invs., Corp.*, 587 F. Supp. 3d 641, 677 (M.D. Tenn. 2022) (denying ongoing DOJ investigation); *Sapssov v. Health Mgmt. Assocs., Inc.*, 22 F. Supp. 3d 1210, 1221 (M.D. Fla. 2013) (denying auditor findings of "widespread" fraud).
[9] Plaintiffs claim that the *Helwig* factors are no longer "controlling" after *Tellabs*, Opp. at 36, but the very authority they invoke says otherwise: *Helwig* "remains good law in the Sixth Circuit." *Chamberlain*, 757 F. Supp. 2d at 700 n.3.

invoke, Plaintiffs rely on internal reports for two factors, but they do not contradict any Technology Statements, as discussed above.  The temporal proximity factor *favors* Cruise given how long ago its statements were made.

A strikingly similar case—*Lamontagne v. Tesla, Inc.*, 2024 WL 4353010 (N.D. Cal. Sept. 30, 2024)—underscores why these claims should be dismissed. There, plaintiffs asserted securities fraud claims based on statements concerning the safety (as compared to human drivers) and Level 4/5 autonomy of Tesla's AVs, which allegedly performed "5,800 times worse than Cruise['s]." *Id.* at *1.  The court dismissed the claims, holding the complaint failed to specify "what the [CW] reports reflected" or how defendants "knew their statements about auto safety were false or misleading" based on the CW reports.  *Id.* at *13–14.  Similarly, here, Plaintiffs argue that Vogt and West reviewed various reports, had "access to" a risk assessment database, or participated in unspecified meetings about Cruise's technology, *see* Opp. at 39, but these generalized allegations have nothing to do with the specific misrepresentations alleged in the AC, *see* Cruise Br. at 30.

Lacking any specific allegations that Defendants made the Technology Statements with scienter, Plaintiffs argue that Cruise's responses to the Accident somehow constituted an admission of scienter with respect to the Technology Statements. Opp. at 46–48.  These arguments should be rejected.  Vogt's apology to Cruise's employees says nothing about fraudulent intent because it was not "along

14

the lines of 'I knew it all along.'" *Ronconi v. Larkin*, 253 F.3d 423, 432–33 (9th Cir. 2001).   Nor did Cruise admit scienter by commissioning a study to improve its vehicles' performance or by resuming manual driving while investigating technical issues; Cruise was entitled to improve its technology, which it never suggested was perfect. *See Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 177 (S.D.N.Y. 2015) (subsequent "improve[ments]" not indicative of fraud); *Grillo v. Tempur-Pedic Int'l, Inc.*, 553 F. Supp. 2d 809, 819–20 (E.D. Ky. 2008) (statement not rendered misleading by "[change to] strategic course").   And again, none of these actions had anything to do with the specific misrepresentations alleged in the AC.[10]

## III.   Leave to Amend Should Be Denied.

Plaintiffs should not be allowed to amend the AC yet again because they have offered "no basis for any proposed amendment." *U.S. ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 739 F. App'x 330, 335 (6th Cir. 2018).

### CONCLUSION

For the foregoing reasons, and the reasons set forth in Defendants' other briefing, the Cruise Defendants respectfully request that the Court grant their motion and dismiss the Amended Complaint with prejudice.

/s/ Roger P. Meyers         /s/ Reid Schar         /s/ John W. Keker

---

[10] Plaintiffs abandoned their scheme liability claim (Count II) by relegating their opposition arguments to a conclusory sentence in a footnote. *Compare* Cruise Br. at 26–27, 33, *with* Opp. at 70 n.24; *see Stewart*, 628 F.3d at 256.

Stephanie A. Douglas
Roger P. Meyers
**BUSH SEYFERTH PLLC**
100 W. Big Beaver Rd.
Suite 400
Troy, MI 48084
(248) 822-7800
douglas@bsplaw.com
meyers@bsplaw.com

*Counsel for Cruise
Defendants*

Reid Schar
**JENNER & BLOCK LLP**
525 Market Street, 29th Floor
San Francisco, CA 94105
(628) 267-6800
rschar@jenner.com

Stephen L. Ascher
**JENNER & BLOCK LLP**
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1600
sascher@jenner.com

Jacob P. Wentzel
**JENNER & BLOCK LLP**
353 North Clark Street
Chicago, IL 60653
(312) 222-9350
jwentzel@jenner.com

*Additional Counsel for Cruise
LLC, Daniel Ammann, and
Wayne G. West*

John W. Keker
Ryan Wong
Sophie A. Hood
Cody Gray
**KEKER, VAN NEST
& PETERS LLP**
633 Battery Street
San Francisco, CA
94111
(415) 391-5400
jkeker@keker.com
rwong@keker.com
shood@keker.com
cgray@keker.com

*Additional Counsel
for Kyle Vogt*

16