# Exhibit A

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| In re: CLOUDERA, INC. SECURITIES LITIGATION, | No. 22-16807 |
| | D.C. No. 3:19-cv-03221-MMC |
| ------------------------------ | |
| MARIUSZ J. KLIN, Lead Plaintiff; THE MARIUSZ J. KLIN MD PA 401K PROFIT SHARING PLAN; ROBERT BOGUSLAWSKI; ARTHUR P. HOFFMAN, on behalf of themselves and all others similarly situated, | OPINION |
| *Plaintiffs-Appellants*, v. | |
| CLOUDERA, INC.; THOMAS J. REILLY; JIM FRANKOLA; MICHAEL A. OLSON; PING LI; PRIYA JAIN; MARTIN COLE; KIMBERLY HAMMONDS; ROSEMARY SCHOOLER; STEVEN SORDELLO; MICHAEL A. STANKEY; ROBERT BEARDEN; PAUL CORMIER; PETER FENTON; KEVIN KLAUSMEYER, | |
| *Defendants-Appellees*. | |

Appeal from the United States District Court
for the Northern District of California
Maxine M. Chesney, District Judge, Presiding

Argued and Submitted October 5, 2023
Honolulu, Hawaii

Filed November 19, 2024

Before:  Marsha S. Berzon, Eric D. Miller, and Lawrence
VanDyke, Circuit Judges.

Opinion by Judge Miller

## SUMMARY[*]

### Securities Fraud Class Action

The panel affirmed the district court's dismissal of a putative securities-fraud class action for failure to state a claim.

Appellant Mariusz Klin purchased Cloudera stock between its initial public offering and a subsequent price drop after the company announced negative quarterly earnings. He alleged that appellee Cloudera, Inc. and its officers and directors made materially false and misleading

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

statements and omissions about the technical capabilities of its products.

The panel affirmed the district court's determination that Klin had not adequately pleaded the falsity of Cloudera's statements when made. The panel explained that, because fraud was involved, Klin's claims were subject to a heightened pleading standard requiring that he state with particularity the circumstances constituting fraud or mistake. However, because certain terms in Cloudera's allegedly misleading statements lacked a plain or ordinary meaning, Klin had to, but did not, plead facts supporting his definitions of those terms.

Reviewing the futility of amendment de novo, the panel also affirmed the district court's conclusion that further amendment of the complaint would be futile, where the district court warned Klin that failure to cure the deficiencies of a previous amended complaint would result in dismissal with prejudice, and Klin had not identified, even on appeal, the specific facts he would plead in a future complaint to remedy the previous complaint's shortcomings.

## COUNSEL

Ramzi Abadou (argued), Kahn Swick & Foti LLP, San Francisco; Lewis S. Kahn, Alexander L. Burns, James T. Fetter, and Alexandra G. Pratt, Kahn Swick & Foti LLC, New Orleans, Louisiana; for Plaintiffs-Appellants.

Joseph R. Palmore (argued), Morrison & Foerster LLP, Washington, D.C.; Anna E. White, Ryan Keats, and Joel F. Wacks, Morrison & Foerster LLP, San Francisco, California; for Defendants-Appellees.

**OPINION**

MILLER, Circuit Judge:

Mariusz Klin appeals the district court's dismissal of this putative securities-fraud class action for failure to state a claim. Klin alleges that Cloudera, Inc. and its officers and directors made dozens of materially false statements about the technical capabilities of its products. The district court held that Klin had not adequately pleaded that the statements were false when they were made. We affirm.

I

Cloudera, Inc. is a data management and analytics software company. As its name suggests, Cloudera offers products that use the cloud—that is, they do not operate locally, but instead on remote servers that customers can access through the internet. If that description seems vague, we have made it deliberately so: As we will see, the precise meaning of terms related to the "cloud" is at the heart of the parties' dispute.

On April 28, 2017, Cloudera held an initial public offering. Just over two years later, on June 5, 2019, the company announced negative quarterly earnings, and the next day its stock price fell more than 40 percent.

Klin, who had purchased Cloudera stock between the initial public offering and the price drop, brought this putative class action in the Northern District of California against Cloudera and several of its officers and directors. After Klin's case was consolidated with cases filed by other shareholders, the district court appointed Klin as the lead plaintiff, and he filed an amended class action complaint. *See* 15 U.S.C. § 78u-4(a)(3).

On behalf of the putative class, Klin asserted claims under sections 11(a), 12(a)(2), and 15 of the Securities Act of 1933 (Securities Act), 15 U.S.C. §§ 77k(a), 77*l*(a)(2), 77*o*, as well as under sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (Exchange Act), 15 U.S.C. §§ 78j(b), 78t(a), and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5. He alleged that Cloudera and the individual defendants "made materially false and misleading public statements and omissions that . . . exaggerated the Company's technological capabilities." The gravamen of the complaint was that Cloudera misled investors by claiming "that it possessed an 'original cloud native architecture' and 'cloud-native platform.'" Klin claimed that Cloudera's software "was not a cloud-native offering" and was instead "widely panned by Cloudera's existing and potential customers for lacking the key attributes of cloud products."

The district court dismissed the complaint for failure to state a claim. The court held that the complaint was deficient because it did "not explain what it meant to have 'cloud-native' products or 'cloud-native architecture' at the time Cloudera Defendants made the challenged statements," adding that "[w]ithout a contemporaneous definition or explanation for what 'cloud-native' technology meant when Cloudera Defendants made the challenged statements, the Court has no basis to find that Plaintiffs have adequately pled that Cloudera Defendants' statements were false."

The district court allowed leave to amend, advising that a second amended complaint "must explain what 'cloud native' meant when Cloudera Defendants made their allegedly false statements and why Cloudera Defendants' statements touting Cloudera's cloud-native technology and architecture were false when made." The court warned that

"failure to cure the deficiencies . . . will result in dismissal of Plaintiffs' deficient claims with prejudice."

Klin then filed a second amended complaint, which is the operative pleading here. That complaint challenged 42 Cloudera statements in total: 32 under the Exchange Act and Rule 10b-5 and 10 under the Securities Act. It alleged that "cloud-native" and "cloud architecture" had fixed meanings during the class period—namely, that they "meant to reasonable investors that such offerings or capabilities had specific material attributes such as the use of containers, ease-of-use, seamless scalability, security and elasticity, none of which the Company's Class Period product offerings provided."

The district court again dismissed. First, as to the 32 allegedly false statements challenged under the Exchange Act and Rule 10b-5, the court held that two were mere puffery and three were forward-looking statements shielded from liability by the safe harbor of 15 U.S.C. § 78u-5(i). Of the remaining 27 statements, 24 pertained to Cloudera's "cloud-native" products. The court found that the "same problem" it had previously identified persisted in the second amended complaint. Specifically, although the complaint offered a definition of the cloud-related terms, Klin pleaded "no evidentiary facts to support such additional assertion, whether from a knowledgeable witness, any . . . documents that used the term 'cloud-native' or 'cloud architecture,' or any other source." The remaining three statements, made in an April 2018 earnings call, did not pertain to the cloud-related terms but instead discussed Cloudera's market position. Klin alleged that Cloudera's statements made at the end of the class period contradicted those earnings call statements. But the district court determined that the later

statements could not reasonably be understood as admissions that the earlier statements were false.

Second, as to the 10 allegedly false statements challenged under the Securities Act, the court held that three were forward-looking and five were related to cloud products and were inadequate for the same reason as the cloud-related statements challenged under the Exchange Act. The remaining two involved risk disclosures required as part of a merger between Cloudera and a competitor. Although Klin alleged that the risks noted by Cloudera had already materialized at the time of the disclosures, the court determined that Klin had not provided any facts showing that the statements were false when they were made.

The district court noted that its earlier order had warned Klin that "failure to cure the deficiencies" in the complaint would result in dismissal with prejudice. It therefore denied leave to amend.

Klin appeals. We review de novo the district court's dismissal for failure to state a claim. *Wells Fargo Bank, N.A. v. Mahogany Meadows Ave. Tr.*, 979 F.3d 1209, 1213 (9th Cir. 2020).

II

We begin by examining the pleading standards applicable to Klin's claims. The Securities Act and the Exchange Act work together to prohibit the use of false or misleading statements in connection with the sale of securities. *See Slack Techs., LLC v. Pirani*, 598 U.S. 759, 762–63 (2023). The Securities Act is principally focused on new offerings, "impos[ing] strict liability on issuing companies when their registration statements contain material misstatements or misleading omissions." *Id.* at 762;

*see* 15 U.S.C. § 77k. Applying more broadly, the Exchange Act and Rule 10b-5, which implements parts of that statute, prohibit material misrepresentations or omissions in connection with the sale of any security—including securities already trading on secondary markets—but only when the "material misleading statement or omission was made 'with scienter, *i.e.*, with intent to deceive, manipulate, or defraud.'" *Slack Techs.*, 598 U.S. at 763 (quoting *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983)); *see* 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5(a).

A common element of claims brought under either statute—and the element at issue in this appeal—is falsity. *See Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 764 (9th Cir. 2023); *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009). "A statement is false or misleading if it 'directly contradict[s] what the defendant knew at that time' or 'omits material information.'" *Glazer Cap. Mgmt.*, 63 F.4th at 764 (brackets in original) (quoting *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008–09 (9th Cir. 2018)).

The question before us is whether Klin adequately pleaded the falsity of Cloudera's statements. In general, a plaintiff's complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under that standard, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

But when fraud is involved, Federal Rule of Civil Procedure 9(b) imposes a higher pleading standard: "In

alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Because Klin's claims under the Exchange Act allege securities fraud, they are subject to Rule 9(b)'s heightened pleading standards. *See In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 835 (9th Cir. 2022). And where, as here, a plaintiff chooses to "allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim," then "the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003). Thus, even though fraud is not an element of Klin's Securities Act claims, those claims too are subject to Rule 9(b) because they rely on the same factual allegations underlying the Exchange Act claims. *See Rubke*, 551 F.3d at 1161.

"To properly plead fraud with particularity under Rule 9(b), 'a pleading must identify the who, what, when, where, and how of the misconduct charged.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (quoting *United States ex rel. Cafasso v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)). In other words, it must provide "an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). Most importantly, the complaint must explain "what is false or misleading about the purportedly fraudulent statement, and why it is false." *Davidson*, 889 F.3d at 964 (quoting *Cafasso*, 637 F.3d at 1055). And to do so, it cannot rely on hindsight; rather, it must explain "why

the statements were false or misleading at the time they were made." *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012).

In addition, for those claims based on the Exchange Act, the Private Securities Litigation Reform Act of 1995 (PSLRA), Pub. L. No. 104-67, 109 Stat. 737, reinforces Rule 9(b) by requiring that the complaint "specify" not only "each statement alleged to have been misleading" but also "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1); s*ee Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1188 (9th Cir. 2021). The PSLRA prescribes an "exacting" standard, under which a "litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why those statements were false," is insufficient. *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008).

### III

Klin does not appeal the dismissal of the claims based on statements that the district court determined to be puffery or forward-looking statements, nor does he appeal the dismissal of the claims based on the allegedly false risk disclosures. That leaves this appeal with 32 statements in total: 27 supporting claims under the Exchange Act and Rule 10b-5, and five supporting claims under the Securities Act. We first consider the statements relating to the cloud properties of Cloudera's products and then address the remaining statements.

### A

All but three of the 32 allegedly false statements involve the cloud capabilities of Cloudera's products; many concern their "cloud-native" nature. A few examples are illustrative:

In a June 2017 earnings call, Cloudera's CEO said that "Cloudera offers the leading cloud-native software platform for machine learning and advanced analytics." In an April 2018 earnings call, Cloudera's co-founder and Chief Strategy Officer said that a particular Cloudera product "delivers the speed, convenience, elasticity and ease-of-use expected in native public cloud services." And in a December 2018 earnings call, the CEO said that "[c]ustomers are coming to our platform, all of them are evaluating cloud, and it's our hybrid cloud capabilities [that] are winning."

It is impossible to evaluate the truth or falsity of those statements without understanding what phrases like "cloud-native," "native public cloud services," and "hybrid cloud" meant at the time the statements were made. As we have explained, the district court noted that the first amended complaint did not define those terms, and it instructed Klin to provide "a contemporaneous definition or explanation for what 'cloud-native' technology meant when Cloudera Defendants made the challenged statements." In the second amended complaint, Klin attempted to do so by alleging that, "throughout the Class Period, the term 'cloud-native' was understood by reasonable investors to mean a software offering with specific core material attributes such as the use of containers, seamless scalability, ease-of-use, and security and elasticity." In a case not subject to Rule 9(b) or the PSLRA, that kind of assertion might be enough to survive dismissal. But it does not establish falsity with particularity, as is required here.

The deficiencies in Klin's complaint are similar to those we identified in *Wochos*, 985 F.3d at 1193–94. In that securities-fraud case, the plaintiffs alleged that Tesla had made false statements about its manufacturing processes,

and their theory of falsity relied on a specialized meaning of some of the terms in the statements. *Id.* at 1185–86, 1193–94. For example, they asserted that when Tesla said that it had "'started the installation of Model 3 manufacturing equipment,'" that statement would have been understood to mean that Tesla had installed "'*automated* equipment.'" *Id.* at 1193. We held that such an assertion was insufficient to satisfy the heightened pleading standards applicable to a securities-fraud action: "Where, as here, a plaintiff claims that the words used in a statement have some special or nuanced meaning that differs from what the literal words suggest, the plaintiff must plead facts that will support this crucial premise." *Id.* In particular, a plaintiff must "plead sufficient facts to establish that the actual term used had the distinctive, and false, meaning" attributed to it. *Id.* at 1194.

The closest Klin came to substantiating his proposed definition was to cite a blog post supposedly establishing that "the terms 'cloud-native' and 'cloud architecture' mean that an offering has specific material attributes such as the use of containers and Kubernetes, seamless scalability, security and elasticity." Although Klin did not attach the post to his complaint, he provided a link to it, so the district court could treat it as incorporated by reference and consider its contents in ruling on the motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). But the post is not helpful to Klin, principally because it does not even use the terms "cloud-native" or "cloud architecture," let alone define them. In addition, the cited post was written in February 2020, nearly three years after some of the challenged statements, so it could not demonstrate that "the statements were false or misleading at the time they were made." *Rigel Pharms.*, 697 F.3d at 876; *see Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001).

On appeal, Klin tries a different approach, arguing for the first time that "[n]o expert supported definition is truly necessary to plead and understand the terms 'cloud' and 'native,' whether separately or together." Instead, he says, the terms can be understood using their "commonly-accepted definitions" and "plain meaning." It is not obvious that the plain meaning of the terms today would be the same as their meaning in 2017 and 2018 when the statements were made—as the complaint acknowledges, cloud computing is a "fast-evolving market." Setting that aside, experts in cloud computing acknowledge that the meaning of the term "cloud" is, well, cloudy. *See, e.g.*, *What Is the Cloud?*, Microsoft Azure, https://azure.microsoft.com/en-us/resources/cloud-computing-dictionary/what-is-the-cloud (last visited Aug. 23, 2024) (explaining that "[t]he definition for the cloud can seem murky"). And even if "cloud" had a plain meaning, it does not follow that "cloud-native" does, especially not one that is understood with the level of specificity that would allow a claim about a "cloud-native" platform to be provably false.

Because the relevant cloud-related terms in the challenged statements lack a plain or ordinary meaning, Klin had to "plead facts" supporting his definitions of those terms. *Wochos*, 985 F.3d at 1193. Because he did not do so, the district court correctly dismissed the claims based on those statements.

B

Klin challenges three additional statements, all made by Cloudera's CEO during an April 2018 earnings call: (1) that Cloudera's disappointing financial performance was a result of the company's being "over-rotated," (2) that "I see nothing that gives me concern about the market," and

(3) that Cloudera anticipated "[n]o changes in the competitive landscape nor end market demand." The district court correctly determined that Klin has not adequately alleged that those statements were false when they were made.

Klin's principal effort to demonstrate the falsity of the statements is derivative of his claims about Cloudera's allegedly inadequate cloud products. He alleges, for example, that the company's poor performance resulted from the fact that "Cloudera lacked any cloud-native architecture" and did not have "pure public cloud capability," and that the market had "shift[ed] to cloud offerings which the Company then lacked." He also asserts that Cloudera "did not compete in the public cloud market" and that its "products could not provide performance comparable to its competitors' cloud offerings." But that theory founders on the same definitional problem as the claims about the other cloud-related statements. The assertions are "unsupported by details" and cannot satisfy the particularity requirement of Rule 9(b). *Vess*, 317 F.3d at 1107.

Klin also relies on statements made at the end of the class period about the challenges Cloudera had faced, such as "we weren't very competitive" and "we were at a competitive disadvantage." But as we have observed, "later, sobering revelations" do not by themselves "make the earlier, cheerier statement a falsehood." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994). Similarly, Klin points to Cloudera's later efforts to develop new products, citing an industry expert who described them as "a complete rethinking from the ground up." We agree with the district court, however, that "[t]he fact that Cloudera later launched a new cloud product . . . does not establish that its previous

product was weak or inadequate." *See Hart v. Lancashire & Yorkshire Ry. Co.* [1869] 21 LT 261 (Court of Exchequer) 263 (Bramwell, B.) (UK) (rejecting the proposition that "because the world gets wiser as it gets older, therefore it was foolish before").

IV

Klin's failure to adequately plead falsity is fatal to all of his claims, so the only remaining issue is whether the district court should have allowed another amendment. Federal Rule of Civil Procedure 15(a) permits a plaintiff to amend the complaint once as a matter of course; further amendment requires the defendant's consent or leave of court, but "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Foman v. Davis*, 371 U.S. 178, 182 (1962). "Although leave to amend should be given freely, denying leave is not an abuse of discretion if 'it is clear that granting leave to amend would have been futile.'" *Lathus v. City of Huntington Beach*, 56 F.4th 1238, 1243 (9th Cir. 2023) (citation omitted) (quoting *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004)). The district court appropriately denied leave to amend and dismissed the case with prejudice.

In attacking the district court's decision to deny leave to amend, Klin urges us to review de novo. Cloudera, for its part, asks us to review for abuse of discretion, an approach that finds support in the language of some of our cases. *See, e.g.*, *Oregon Clinic, PC v. Fireman's Fund Ins. Co.*, 75 F.4th 1064, 1073 (9th Cir. 2023); *Perez v. Mortg. Elec. Registration Sys., Inc.*, 959 F.3d 334, 340 (9th Cir. 2020); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009); *Metzler*, 540 F.3d at 1072. But whatever the circumstances are that may justify abuse-of-discretion

review of a denial of leave to amend, the cited cases did not specify that abuse-of-discretion review applies to the determination that a complaint could not be saved by further amendment. Instead, even when not saying so expressly, we appear to have conducted de novo review in that context. And in at least some cases, we have said so expressly: "[W]e review the question of futility of amendment de novo." *Wochos*, 985 F.3d at 1197 (quoting *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1172 (9th Cir. 2016)); *see also, e.g.*, *Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1204 (9th Cir. 2021) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." (quoting *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam))).

Reviewing the futility question de novo, we agree with the district court that further amendment would be futile. In dismissing the first amended complaint, the district court offered a detailed explanation of the complaint's deficiencies and how to correct them, including that a viable complaint "must explain what 'cloud native' meant when Cloudera Defendants made their allegedly false statements and why Cloudera Defendants' statements touting Cloudera's cloud-native technology and architecture were false when made." The court warned Klin that "failure to cure the deficiencies identified . . . will result in dismissal . . . with prejudice." But Klin did not correct the deficiencies. To the contrary, as the district court observed, in many instances he "offer[ed] no new allegations or arguments."

The district court evidently saw no reason to believe that Klin would do better with another try, and neither do we. Klin has not identified, including in his appellate briefs, the

specific facts that he would plead in a future complaint to remedy the previous complaint's shortcomings. In his briefing before this court, Klin states that he can provide definitions from "leading cloud computing companies . . . as necessary . . . to remedy the definitional support the district court found lacking." But the district court already asked for that definitional support, and the second amended complaint did not provide it. Even now, Klin does not identify the definitions he could allege or demonstrate how those unspecified definitions would explain the meaning of the terms *at the time* of the alleged misstatements, which was a critical omission from the complaint. *See Metzler*, 540 F.3d at 1072 (holding amendment to be futile because the plaintiff could not identify "additional facts that it might allege to cure [the] deficiencies, which persisted in every prior iteration" of its complaint); *see also Espy v. J2 Glob., Inc.*, 99 F.4th 527, 542 (9th Cir. 2024) ("[V]ague promise[s] of 'additional information' cannot cure the deficiencies in the complaint."). Because Klin has "not shown any other basis for concluding that further amendment would not be futile," the district court properly denied leave to amend. *Wochos*, 985 F.3d at 1198.

Klin objects that the district court did not explain its decision to deny leave to amend. We have held that "[a] simple denial of leave to amend without any explanation by the district court is subject to reversal," *Eminence*, 316 F.3d at 1052, because "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion," *Foman*, 371 U.S. at 182. But the district court referred to—and quoted—its earlier warning that "failure to cure the deficiencies . . . will result in dismissal . . . with prejudice." With the context provided by

the previous order, the court's reasons for denying leave were apparent.

**AFFIRMED.**