# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| ) | Case No.  4:23-cv-13132-SDK-EAS |
| ) |  |
| ) |  |
| ) | District Judge Shalina D. Kumar |
| IN RE GENERAL MOTORS ) |  |
| COMPANY SECURITIES LITIGATION ) |  |
| ) | Magistrate Judge Elizabeth A. |
| ) | Stafford |
| ) |  |
| ) |  |

# PLAINTIFFS' RESPONSE TO DEFENDANTS' NOTICE OF
# SUPPLEMENTAL AUTHORITY

Defendants' submit (ECF No. 47) of *In re Cloudera, Inc.*, 121 F.4th 1180 (9th Cir. 2024) claiming it is supplemental authority supporting their Motion to Dismiss (ECF No. 31).  It does not "***supplement***" anything—it tries to salvage their Motion to Dismiss by contradicting (and abandoning) their prior arguments on falsity.

***Cloudera* Explained**.  The Ninth Circuit considered several "cloud" software statements.  For example, it first found that the phrase "cloud-native" did not have a plain English meaning.  *Cloudera,* at 1187-89.  While "cloud" may convey something about remote servers, it is unclear what adding the term "native" suggests. *Id.*  Plaintiffs alleged that "cloud-native" refers to software that is "elastic[]" and "scalab[le]," and criticized Cloudera's products on this basis.  *Id.* at 1188.  However, plaintiffs' notion that "cloud-native" carried this definition depended entirely on a single, post-class period blog post, by a third-party, that did not contain the term "cloud-native."  *Id.* at 1188.  The Court found the pleadings did not establish a plain English meaning or this technical meaning, instead finding it was indiscernible jargon.  *Id.* at 1188-89.  *Cloudera* is about meaningless statements.

**Defendants' About-face**.  Defendants never disputed *any* of the statements in this Action as similarly meaningless.  For example, Defendants argued that statements claiming the cars were "fully driverless" merely meant the cars operated without an on-board driver.  ECF No. 31 at 19-22.  Now they tacitly abandon that (meritless) argument, and instead claim the statement was meaningless jargon.

1

Raising this new theory days before oral argument is improper.  *See In re Home Point Cap. Inc. Sec. Litig.*, 2022 WL 18932069, at *5 (E.D. Mich. Oct. 5, 2022) (Kumar, J.) (arguments not raised in motion are waived).  This is not Defendants' first offense; they ignored key issues in their motions to dismiss (ECF No. 39 at 12, 15), only to address them on reply.  ECF Nos. 42 at 7-8, 43 at 8-11.

**Defendants' New Argument Is Meritless**.  The statements at issue in this Action are not the sort of vague tech-jargon addressed by *Cloudera*.

**First**, Defendants' submission ignores the statements claiming Cruise was exiting the "R&D phase," and "from a technical standpoint, [had] basically zero incremental work to get to revenue."  *See* Complaint, ECF No. 23 (cited as "¶_") ¶¶278, 286, 304.  These assertions are not tech-jargon: they conveyed that Cruise was ready to generate revenue and move to the next stage of its touted business plan. Plaintiffs detailed that: (i) courts routinely find such statements actionable; (ii) analysts relied on these statements; (iii) Cruise was not ready for commercialization; (iv) Cruise admitted as much after the Class Period through its actions;[1] and (v) Defendants motions to dismiss ignored these statements.  ECF No. 39 at 10-12.

---

[1] GM recently announced it was shuttering Cruise.  *See* Exhibit A.  Cruise cannot have gone from a $30 billion business (¶387), with Level 4 fully driverless cars ready for commercialization, to ***shutting down*** and transferring its technology to assist GM's *forthcoming* efforts to "advance[] ***in L3 and then potentially move to L4 as the technology gets ready***."  Ex. A.  As with the matters raised by Plaintiffs' prior supplemental material filing (ECF No. 41), Plaintiffs note that these materials would be relevant to any amended complaint, but presently stand on the allegations as pled.

**Second**, Defendants' submission makes no mention of the statements claiming Cruise had "a system that can operate without a human in the loop now." *See* ¶284; *see also* ¶282 (similar). These statements are plain English—not jargon. They conveyed that Cruise could operate robotaxis without human involvement; they were false and misleading because humans were very much "in the loop," as humans intervened remotely every 2.5-5 miles and frequently needed to retrieve the cars as they stalled in traffic. *E.g.* ¶¶104-06, 120, 127, 174-75. Defendants ignored these statements in their motions to dismiss. *See* ECF No. 39 at 15. On reply, Defendants argued these statements had the same meaning as "fully driverless"— not that they were meaningless. *See* ECF No. 43 at 11.[2]

**Third**, Defendants' statements asserting the cars were "fully autonomous," "fully driverless," "full driverless," and "truly driverless" were not meaningless jargon. ECF No. 39 at 12-13. Unlike the statements in *Cloudera*, these phrases each have a clear, in-context, plain English meaning: they depicted that, without notable exception, the cars drive safely and appropriately without human input. Also unlike *Cloudera*, where plaintiffs relied principally on a post-class period blog post, by a third-party, that did not contain the term "cloud-native," to define the jargon at issue

---

[2] As to the Defendants' argument on reply, the "out of the loop" statements are more explicit descriptions of the state of Cruise's technology. While "out of the loop" and "fully driverless" contributed to the same false depiction, any analysis of the statements must consider the more explicit "out of the loop" statements, and not merely treat them as redundant to the "fully driverless" statements.

therein (*Cloudera*, 121 F.4th at 1188), Plaintiffs further confirm the meaning of these statements with Defendants' own words, including Cruise's blog post, in which it expressly eschewed any notion these statements were meaningless jargon, stating:

> The term **fully driverless** is **used not merely for effect but to communicate an essential expectation**: *The AV must be capable of driving fully autonomously 100% of the time* . . .  This is to draw a distinction with the L2-L3 ADAS function where there is an expectation of an alert safety driver, who must be prepared to quickly take over.  Driving the car autonomously 90% of the time . . . would be disastrous in the AV context.

¶80 (bold emphasis added).   Defendants previously argued the term "fully driverless" merely conveyed the absence of an on-board driver.  ECF No. 31 at 19-22.  That prior argument is inconsistent with (i) Defendants' new theory that the statements were meaningless under *Cloudera*, (ii) the statements' plain meaning, (iii) Cruise's blog post, (iv) and analyst commentary.  *E.g.*, ¶81 (Morningstar stating that Cruise could now operate "without remote assistance or a safety driver").

**Fourth**, "Level 4" *is* a technical term, but it is far from meaningless.  The pleadings detailed that it was used—*e.g.*, in the blog post just mentioned—to express the same concept as "fully driverless."   ECF No. 39 at 28-33.   However, at a minimum, "Level 4" indicated compliance with the SAE's definition of Level 4, which Cruise AVs flunked because (i) they relied on humans to perform "dynamic driving tasks" and (ii) could not reliably perform "DDT Fallback."   *See id*.  Defendants never argued the term was meaningless.  ECF No. 31 at 13-19.

**Fifth**, Defendants argued their "safer than human" misstatements merely conveyed that Cruise's crash rate was lower than human drivers. *Id.* at 22-23. Plaintiffs argued that Cruise was both quantitatively and qualitatively less safe than humans, as a typical safe human driver doesn't engage in the erratic and dangerous driving that Cruise's AVs did. ECF No. 39 at 34. Defendants did not argue, and cannot seriously claim, their safety statements were meaningless jargon.

**Conclusion**. Because this filing is focused on *Cloudera*, it emphasizes the literal meaning, and consequent falsity, of Defendants' statements. But as explained in Plaintiffs' brief, even "literally true statements that create a materially misleading impression [] support claims for securities fraud." *Id.* at 14 (citing *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 240 (2d Cir. 2016)). There is no credible basis to dispute that Defendants created a false impression of Cruise's technology.

[signatures on following page]

5

DATED: December 17, 2024          Respectfully submitted,


                                /s/ *Jake Bissell-Linsk*
Carol C. Villegas (N.Y. 4154324)
Jake Bissell-Linsk (N.Y. 5445911)
Guillaume Buell (N.Y. 4820288)
Matthew J. Grier (N.Y. 5502216)
Adam Federer (N.Y. 5574439)
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
cvillegas@labaton.com
jbissell-linsk@labaton.com
gbuell@labaton.com
mgrier@labaton.com
afederer@labaton.com

*Lead Counsel for Lead Plaintiff*
*City of Hollywood Police Officers'*
*Retirement System and the Proposed Class,*
*and additional named plaintiff Plymouth*
*County Retirement Association*

Matthew Henzi
Cynthia Billings-Dunn
**ASHER KELLY PLLC**
25800 Northwestern Highway, Suite 1100
Southfield, Michigan 48075
Telephone: (248) 746-2710
mhenzi@asherkellylaw.com
cbdunn@asherkellylaw.com

*Liaison Counsel for Lead Plaintiff*
*City of Hollywood Police Officers'*
*Retirement System and the Proposed Class*

6

Robert D. Klausner
Stuart Kaufman
**KLAUSNER, KAUFMAN, JENSEN & LEVINSON**
7080 Northwest 4th Street
Plantation, Florida 33317
Telephone: (954) 916-1202
bob@robertdklausner.com
stu@robertdklausner.com

*Additional Counsel for Lead Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2024, I caused the foregoing paper to be electronically filed with the Clerk of the Court using the ECF system, which will send notification of such filing to all parties of record.

DATED: December 17, 2024          Respectfully submitted,

*/s/ Jake Bissell-Linsk*
Jake Bissell-Linsk (N.Y. 5445911)